BEDDALL v. BRITISH & FOREIGN MARINE INS. CO., Limited.

(Supreme Court, General Term, First Department.   January 13, 1893.)

MARINE INSURANCE—DURATION OF RISK—"FINAL DESTINATION."

> An open policy of marine insurance provided that the risk "continues and endures until the said goods and merchandise shall be safely landed;" and a special clause written on the margin provided that "this policy covers also all risks at and from the port of destination to the final destination." *Held*, that the latter clause only applied when the destination of the goods was beyond the seaport, and when a cargo was unloaded, and placed on the wharf at the port to which it was consigned, it had reached its "final destination," within the meaning of the policy, though the consignee had not taken actual possession.

Appeal from special term, New York county.

Action by Edward F. Beddall against the British & Foreign Marine Insurance Company, Limited.   Defendant had judgment, and plaintiff appeals.   Affirmed.

Argued before VAN BRUNT, P. J., and O'BRIEN and BARRETT, JJ.

Convers & Kirlin, (William G. Choate, E. B. Convers, and J. Parker Kirlin, of counsel,) for appellant.

Butler, Stillman & Hubbard, (William Allen Butler and Wilhelmus Mynderse, of counsel,) for respondent.

BARRETT, J.   This action was upon a policy of marine insurance, issued by the defendant, to recover a loss on 403 bales of cotton destroyed by fire on a dock in the port of Liverpool, Eng., on the 26th of October, 1886.   The facts essential to a proper understanding of the question presented are these:   The Liverpool house of T. A. Wooley & Co. had a branch house in Norfolk, Va., which was in charge of an agent named Kennedy.   This branch house did business in the name of T. A. Wooley.   On the 1st of September, 1885, the policy in question was issued to T. A. Wooley, upon the application of Kennedy, to cover transatlantic shipments of cotton.   It was an open policy, and it contained a provision by which each shipment made by T. A. Wooley from Norfolk could be brought under its protection.   By this provision the insured was authorized to issue, upon specific shipments, certificates of the company, signed by its attorney, certifying that the bales mentioned therein were covered by the policy.   In the early part of October, 1886, T. A. Wooley shipped by the steamship Hugo, then lying in the port of Norfolk, and bound for Liverpool, 403 bales of cotton.   At the same time, and pursuant to the authority conferred by the policy, five certificates of insurance were issued at Norfork certifying that the defendant insured, under the policy, $21,150 on these 403 bales.   The cotton, which was the property of T. A. Wooley & Co., subject to certain advances, duly arrived in Liverpool, and was there discharged upon Hornby dock.   It was all discharged on the 25th of October, 1886, but it was not removed by Wooley & Co., or by their brokers, on that day.   Early the next morning, while the cotton was still lying on Hornby dock, it was badly damaged by fire; and the question is as to the defendant's responsibility for the resulting loss.   It appears that Woolley & Co.'s brokers, Molyneux, Taylor & Co., at the request of Woolley & Co., and for their account, took up the documents relating to this cotton, and at the same time insured it against fire in five independent companies.   This was on the 23d of October, while the cotton was being discharged from the Hugo.   After the fire the cotton was abandoned to the five companies, and they subsequently paid therefor as a total loss.   At the time of this payment, Wooley & Co. and Molyneux, Taylor & Co. agreed to assign to the five companies all their rights under the defendant's policy, and subsequently all such rights were assigned by the companies, by Wooley & Co., and by Molyneux, Taylor & Co., to the plaintiff.

Upon this state of facts there can be no question, if the ordinary terms of the policy are to govern, but that the defendant's insurance terminated when, according to the usual course of business, the cotton was safely landed at the port of destination.   The language of the policy is explicit, that the adventure begins from and immediately following the loading of the goods and merchandise on board of the vessel, and "continues and endures until the said goods and merchandise shall be safely landed."   And the insurance is upon cotton to be laden on vessel or vessels, sail or steam, "at and from Atlantic or Gulf ports in the United States, or from interior points, via said seaports to port or ports in Europe direct, or via port or ports."   Under these provisions, the

risk clearly ended upon the landing of the goods at the port of destination. The plaintiff's contention is that the insurance thus effected was enlarged by a special clause in writing upon the margin of the policy. This clause reads as follows: "This policy covers, also, all risks at and from the port of destination to the final destination of the cotton." The plaintiff says that the final destination of the cotton, as here contemplated, was "the actual, manual custody and control of the consignees at the port of destination;" and, therefore, as the loss occurred before the delivery, it so occurred before the arrival of the cotton at its final destination. We think this is a strained interpretation of the clause in question. What was meant by the expression "final destination" was clearly a locality, and not a person. The idea that a personal delivery was contemplated seems to confuse the insurer's liability with that of a common carrier. In a general sense, the goods were of course destined to go to the consignees; but the phrase is awkward, obscure, and far-fetched, as expressive of a contract to extend the insurance until actual delivery. If the risk was to run until delivery, it was easy to say so in plain words, without employing a roundabout expression, which might or might not mean that, and might or might not mean several other things. Plainly, the intention was to widen the area of locality,—that is, to push the risk beyond the primary port of destination to the final destination; that is, to the ultimate locality contemplated when the adventure was begun. This construction requires no evidence aliunde the instrument, and such evidence may safely be disregarded. We agree with the appellant that the written clause in question should prevail over the printed matter, and that the intention was to enlarge the insurance. But this intention was a general one, having no relation to this particular insurance. The insured did not here go to the insurer, and ask to have the clause applied to the shipment in question. The clause was there already, written upon the margin of the policy, and ready to be applied to any adventure where there might happen to be a destination for the goods beyond "the port or ports in Europe" referred to in the printed terms. But, where there was no such further destination, the insurance terminated at "the port or ports in Europe" specified in the bill of lading, and terminated in the usual way, when the goods were safely landed, not when they reached the warehouse to which they were destined, nor when they were placed upon the carts destined to carry them there. Our construction, too, is that which the parties themselves placed upon the contract when the brokers took out the fire policies. It would be strange if they went to the expense of all this additional insurance, believing themselves to be already insured. Without considering any other question, we think the written clause under consideration was ingrafted upon the policy for the purpose of continuing any insurance which might from time to time be effected under it to the final destination of the goods under the contract of carriage; that is, to any specified point beyond the port where carriage by vessel ceased; and this conclusion is arrived at solely upon the terms of the clause itself. This construction gives the fullest effect to the written addition to the printed policy, and is yet in

harmony with the general rule that the risk ends when the goods are safely landed at the point of destination. The judgment appealed from should be affirmed, with costs. All concur.